IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

The CITY OF HUNTINGTON, a West Virginia
municipal corporation,

      Plaintiff,

v.                                                    Civil Action No.  3:22-cv-00402

THE LIFEHOUSE, INC., a West Virginia
corporation,

      Defendant.

### THE CITY OF HUNTINGTON'S COMPLAINT
### FOR DECLARATORY RELIEF

Comes now the City of Huntington ("Huntington" or "City") pursuant to Rule 57 of the Federal Rules of Civil Procedure, *28 U.S.C. §2201,* and W.Va. Code §55-13-1 et seq., which for its Complaint for Declaratory Relief does state as follows:

### Jurisdiction

1. The issues before the Court are fully resolvable by the application of reasonable accommodation provisions of two statutes: First, the Fair Housing Act Of 1968, *42 U.S.C. §3601, 3604(f)(3)(B) et. seq.*("FHA"); and second, the Americans With Disabilities Act, *42 U.S.C. §12101, 12182 et. seq.* ("ADA").

2. The Court has jurisdiction over this matter pursuant to *28 U.S.C. §1331.*

1

**Factual Background**

3.      Huntington is a municipal corporation of the State of West Virginia, and as such has specific statutory jurisdiction over matters such as zoning, *W.Va. Code §8A-7-1 et seq.,* and building and fire codes and enforcement thereof, *W.Va. Code §8-12-13* and *§15A-11-13* respectively.

4.      Huntington has enacted a zoning code pursuant to West Virginia law that regulates the use of property within the City. The Huntington zoning code limits that number of unrelated persons in a "Family/Household Unit" to not more than five unrelated persons. *H.R.C. §1315.02.* [Appendix, Ex. A].

5.      Huntington has enacted a variety of building codes, including the 2018 International Property Maintenance Code, as permitted by West Virginia law. *W.Va. Code §8-12-13* provides that if a municipality is to enact a building code, it must enact the building code adopted by the State. Under an ordinance adopted by the City Council, *H.R.C. 2022-O-18* [Appx. Ex. B], such building code has been adopted. [Prior versions of the state building code have been adopted by the City for at least the past 15 years. The State, from time to time, requires re-adoption of the Code with amendments.]

6.      Similarly, Huntington has enacted a fire code as permitted by West Virginia law. *W.Va. Code §15A-11-13* and *WV Leg. Rule Title 87, Series 1* provide that if a municipality is to enact a fire code, it must enact the fire code adopted by the State. Under an ordinance adopted by the City Council, *H.R.C. 2022-O-22* [Appx. Ex. C], such fire code has been adopted. [Prior versions of the state fire code have been adopted by the City for at least the past 15 years. The State, from time to time, requires re-adoption of the Code with amendments.] The adopted Code is the NFPA 101 (2021).

7. The Lifehouse is a West Virginia corporation that operates at least 14 sober living homes or recovery residences, or apartment buildings, within the City of Huntington. Upon information and belief, the relevant properties include the following:

    a. 1401 Jefferson Avenue

    b. 449 Fifth Avenue

    c. 220 Fifth Avenue

    d. 236 Fifth Avenue

    e. 617 Trenton Place

    f. 631 Trenton Place

    g. 633 Trenton Place

    h. 637 Fourth Street

    i. 635 Fourth Street

    j. 631 Fourth Street

    k. 629 Fourth Street

    l. 628 Fourth Street

    m. 617 Fourth Street

    n. 400 Washington Avenue

**Certification of Sober Living Homes Under West Virginia Law**

8. Effective June 1, 2020, a West Virginia statute was enacted to create a pathway for sober living homes (hereinafter "SLH") to become certified under the statute. *W.Va. Code §16-59-1 et seq.* Importantly, certification is now required for any SLH to receive referrals from the Division of Corrections and Rehabilitation, the Parole Board, county probation offices, day report centers, municipal courts, and any medical or clinical treatment facility that receives funds from the state

treasury. Further, in order to receive any funding directly from the state treasury, an SLH must be certified. See, *W.Va. Code §16-59-3*.

9. The state certification statute provides for municipal inspections of the SLH prior to certification if the municipality requires such inspection applicable to single family housing. *W.Va. Code §16-59-2(b)(2) and (c)*.

**Huntington Zoning Ordinance – Definition of Family**

10. The City of Huntington zoning code in "Definitions" at *H.R.C. Art. 1315,* under "FAMILY/HOUSEHOLD UNIT" states as follows:

> All persons living in the same household who are related by birth, marriage, or adoption. Additionally, family refers to the following:
>
> A. An individual, or two or more persons related by blood, marriage, or adoption, living together in a dwelling unit.
>
> B. A group of not more than five unrelated people living together as a single housekeeping unit in a dwelling unit sharing common facilities as considered reasonably appropriate for a family related by blood, marriage, or adoption. For a household unit for the disabled (See "Disabled" in definitions), a single staff person may reside on the premises and shall not be included in the total number of occupants. Any additional staff shall be included in the total number of occupants. (For household unit for disabled, see also "Group Residential Facility").

The term "Group Residential Facility" as stated herein applies to a facility "licensed by the Department of Health and Human Resources", which is not applicable for an SLH. Upon information and belief, 400 Washington Avenue is a Level III treatment center (Under W.Va. DHHR designation) that may meet the definitional requirements of the Group Residential Facility.

**City of Huntington Rental Registry and Inspection Ordinance**

11. The City of Huntington further has enacted as of August 27, 2018, a "Residential Rental Unit Licensing And Inspection" ordinance with the intention of assuring safe and sanitary rental housing stock within the City. Single family residences that are also rental units are subject to the inspection requirements of the rental registry ordinance. SLHs (as well as "Oxford Houses"

4

if they are not owner occupied) fall within the scope of the ordinance as rental property. Among its features, it requires the landlords or owners to permit inspections of units either periodically or with cause for compliance with "state laws related to building, fire, health, safety, or zoning." H.R.C. §1737.12(a). That provision states as follows:

> In addition to all other inspections permitted herein or otherwise permitted by law, each residential rental unit shall be subject to a periodic inspection that shall take place no more than once in any 12-month period for each rental unit. The inspection shall determine compliance with the provisions of this article and all other applicable city, county or state laws related to building, fire, health, safety, or zoning. *[H.R.C. Art. 1737* is set forth in Appx. Ex. D].

12. For purposes of the rental registry ordinance, residents of SLHs are similarly situated to persons residing in a single family home that is non-owner occupied. Non-owner occupied single family homes are subject to the rental registry ordinance and the attendant inspection program requirement. For the purposes of the zoning ordinance, persons living in an SLH are similarly situated to unrelated, non-disabled persons living in a single family home as a "Family/Household Unit".

13. A *"Landlord"* is defined in the ordinance as meaning *"any person or entity who grants a lease or otherwise permits the use of his real estate or portion thereof for a consideration, monetary or otherwise including by land contract and rent-to-own agreements."* A *"Residential Rental Unit"* is defined as meaning *"a room or group of rooms within any structure, building, house, mobile home, or any portion thereof, arranged or designed to be occupied for residential sleeping, living, cooking, and sanitation purposes by one or more persons, which is leased or rented from the owner of such units, or the owner's designated agent, to any tenant, whether by day, week, month, year, or any other term."* [The ordinance then contains exemptions not applicable to this matter.]

14. Because the City has an ordinance requiring the inspection of SLHs, the state statute requiring the inspection of an SLH prior to certification applies to all SLHs located in the City seeking certification under the statute. *W.Va. Code §16-59-2(b)(2) and (c).* The inspection of SLHs is required even if a SLH is classified as a single family home, because all residences, including even residences occupied by a family, are subject to rental registry inspection if the property is rented or its occupants pay to reside in the property.

**The West Virginia and City of Huntington Fire Code**

15. The Fire Code of the State of West Virginia and the City of Huntington, also known as NFPA101 (2021 Edition) (the "Fire Code") classifies living units in accordance with the number of people residing in the unit. [Relevant provisions of the NFPA 101 are included in the Appendix as Exhibit E]. A *One or Two Family Dwelling Unit* is defined as "*each dwelling unit occupied by members of a single family with not more than three outsiders, if any, accommodated in rented rooms.*" NFPA 101, Sec. 6.1.8.1.1 (2021). A *Lodging or Rooming House* is defined as "*[a] building or portion thereof that does not qualify as a one- or two-family dwelling, that provides sleeping accommodations for a total of 16 or fewer people on a transient or permanent basis, without personal care services, with or without meals, but without separate cooking facilities for individual occupants.*" NFPA 101, Sec. 6.1.8.1.2 (2021). A *Dormitory* is defined as "*[a] building or a space in a building in which group sleeping accommodations are provided for more than 16 persons who are not members of the same family in one room, or a series of closely associated rooms, under joint occupancy and single management, with or without meals, but without individual cooking facilities.*" NFPA 101 Sec. 6.1.8.1.4 (2021). An *Apartment Building* is defined as "*[a] building or portion thereof containing three or more*

*dwelling units with independent cooking and bathroom facilities.*" NFPA 101 Sec. 6.1.8.1.5 (2021).

16. Depending on the change in use of a particular property, an existing property may be considered "new" under the classification system of the Fire Code. NFPA 101 Sec. 43.7 (2021). In the case of Lifehouse changing the use of existing one or two family dwellings to either "lodging and rooming" or "dormitory" uses, the classification is considered "new".

17. Under the Fire Code, each category of living unit has specific requirements for fire safety. These requirements escalate as the unit size and human capacity increases. Lodging or Rooming Houses, for example, require two means of emergency egress from sleeping quarters not on the ground level. NFPA 101 Sec. 26.2.1.3 (2021). Fire alarm systems are required. NFPA 101 Sec. 26.3.4.1 (2021). Smoke alarms are required in each sleeping room. NFPA 101 Sec. 26.3.4.5 (2021). Interior doors must be self-closing. NFPA 101 Sec. 26.3.5.7 (2021). Numerous other requirements are established in the Fire Code for lodging and rooming facilities. Requirements for dormitories and apartment buildings are even more stringent, including the requirement of sprinkler systems in most cases. (NFPA 101 Sec. 28.3.5.1 and NFPA 101 Sec. 30.1 (2021), respectively).

18. Upon information and belief, most of the Lifehouse properties are classified as Lodging and Rooming, based on occupancy, while some may be classified as dormitories, for the purposes of the Fire Code. One property, 400 Washington Avenue, is classified as an apartment building.

**The International Property Maintenance Code**

19. Further, and in addition to the Fire Code, the International Property Maintenance Code, ("IMPC"), also adopted by the City of Huntington as a part of the aforementioned Building

Code, concerning bedroom size, provides "*[e]very living room shall contain not less than 120 square feet (11.2 square meters) and every bedroom shall contain not less than 70 square feet (6.5 square meters) and every bedroom occupied by more than one person shall contain not less than 50 square feet (4.6 square meters) of floor area for each occupant thereof.*" IMPC Sec. 404.4.1 (2021). [Ex. F].

20. All Lifehouse properties are subject to the IMPC requirements for required floor space for each bedroom in each SLH.

21. The Fair Housing Act of 1968, at 42 USCA §3607(b)(1), exempts maximum occupancy provisions from the nondiscrimination provisions of the FHA: "*Nothing in this subchapter limits the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling. Nor does any provision in this subchapter regarding familial status apply with respect to housing for older persons.*"

22. The maximum occupancy restrictions of the IMPC, while subject to reasonableness analysis, are not subject to any reasonable accommodation analysis.

**The Compliance Requirement**

23. In order to comply with both the WVARR inspection requirement and the Rental Registry Ordinance requirements, a property must comply with the provisions of the zoning ordinance, the Fire Code and the International Property Maintenance Code.

**Inspection Refusal History**

24. The City of Huntington, in conjunction with the West Virginia Alliance of Recovery Residences ("WVARR"), which is the entity that has contracted with the Department of Health and Human Services to conduct the certification process pursuant to *W.Va. Code §16-59-2,*

conducts inspections of SLHs within the City to determine whether the SLH should be certified. Further, the City inspects SLHs pursuant to the rental registry ordinance.

25.     On numerous occasions, the City has requested the opportunity to inspect Lifehouse properties under both *W.Va. Code §16-59-1, et seq.* and *H.R.C. Art. 1737(Rental Registry Ordinance)* only to be rebuffed by Lifehouse authorities. Instead, Lifehouse has offered "tours" of pre-designated properties chosen by Lifehouse. Apart from the duty to inspect pursuant to the certification process and the rental registry periodic inspection program requirements, the City has received occasional complaints concerning the habitability of some Lifehouse houses.

26.     On or about April 8, 2022, acting by and through its counsel, Lifehouse submitted a general request for reasonable accommodation, purportedly pursuant to the ADA and FHA provisions relating to reasonable accommodations for disabled persons. The request stated as follows:

> *A reasonable application of Article 1737 would be to recognize the residents of TLH [a/k/a The Lighthouse] as a single family. It is not rational to classify TLH as something other than a single-family use. In the alternative, TLH request that you waive any limitation on the number of unrelated disabled persons who can reside together in a single-family zone and to hold in abeyance any enforcement or inspection efforts.*

Referencing both the FHA and the ADA, Lifehouse stated:

> *Please consider this letter a formal request by TLH [Lighthouse], in addition to prior requests made by TLH, to the City of Huntington, W.Va. and the Huntington Fire Marshal for a reasonable accommodation under federal and state law.* [Appx. Ex. G].

27.     The reasonable accommodation request was essentially for the City to determine that no provision of the zoning ordinance, and that no provision of the building and fire codes applicable to life, health and safety apply to the 14 Lifehouse houses.

28. While the Lifehouse request set forth a briefing of its legal argument, it provided no analysis as to why the application of the inspection framework or the maximum occupant provisions result in disparate treatment of the SLH occupants compared to non-disabled persons similarly situated. Lifehouse failed to provide an explanation as to how the requested accommodations were reasonable and necessary to afford a disabled person an equal opportunity to use and enjoy the dwelling. The request sought an unprecedented global exemption from laws applicable to all other classifications of occupants.

29. The request was devoid of any factual information, except for a recitation of "The Lifehouse Concept", which provided very little factual development to support a reasonable accommodation request. The City thereafter followed up with interrogatories seeking factual responses applicable to each house related to categories that included the structure itself, the residents, and the program. The questions are narrowly tailored to determine the type of facility that is being operated at each location and to determine whether the request is reasonable in nature.

30. Thereafter, Lifehouse refused to provide responses to the interrogatories, presumably insisting that the City rely solely on "The Lifehouse Concept" language provided by Lifehouse that it should be exempt from all zoning and safety ordinances and regulations.

31. On or about September 2, 2022, Lifehouse submitted a document to the City on a form provided by WVARR titled "Local Ordinance Verification Of Compliance Form". [Appx. Ex H]. The form provides the following explanation to the entity submitting the form:

> In accordance with West Virginia Code §16-59-2 pertaining to the certification of recovery residences, counties and municipalities may require verification of compliance with applicable local building, maximum occupancy, fire safety, and sanitation codes applicable to the type of housing operated by a recovery residence provider. If your recovery residence is located within a county or municipality that requires verification of compliance (VOC), this form must be

completed for *each* county or municipality in which your organization operates that requires a VOC and submitted as part of your WVARR certification application.

32. The City has repeatedly requested the opportunity to inspect the properties, but the inspections have not been permitted by Lifehouse.

33. Upon information and belief, Lifehouse has no intention of complying with the WVARR certification requirement or the City rental registry inspection requirement pursuant to *H.R.C. §1737*. Instead, it seeks to evade the important zoning, building and fire requirements of the zoning ordinance and building codes by seeking a blanket exemption from any law applying to zoning, building or fire codes.

34. Lifehouse relies solely on its conclusion that it should be treated as a "single family use" under ADA and FHA analysis, and it thereby claims a blanket exemption from the operation of any zoning, fire or building maintenance ordinance if it does not directly apply to a single family.

35. The City contends conversely that while the ADA and FHA restrict the operation of zoning and building maintenance ordinances where they have a disparate impact on persons with disabilities, there is no merit to making a comprehensive claim of immunity from zoning, fire and building maintenance laws under the auspice of seeking a reasonable accommodation.

36. Neither the Americans With Disabilities Act, *42 U.S.C. §12101 et. seq.*, nor the Fair Housing Act Of 1968, *42 U.S.C. §3601 et. seq.* exempt the Lifehouse from the inspection requirements of the City's rental registry ordinance generally, and it is likewise subject to the inspection requirements set for therein for the purposes of certification pursuant *W.Va. Code §16-59-1 et seq.*

37. The accommodation request of Lifehouse to fully exempt all Lifehouse locations from the operation of all zoning, building and safety laws is not reasonable under the reasonable accommodation analysis set forth in both the ADA and the FHA.

38. An actual case or controversy exists between the parties to this action.

**WHEREFORE,** the plaintiff asks that the Court grant declaratory judgment to the City of Huntington as follows:

a. That neither the Americans With Disabilities Act, *42 U.S.C. §12101 et. seq.*, nor the Fair Housing Act Of 1968, *42 U.S.C. §3601 et. seq.* exempt the Lifehouse from the inspection requirements of the City's rental registry ordinance generally and that it is likewise subject to the inspection requirements set for therein for the purposes of certification pursuant *W.Va. Code §16-59-1 et seq.*

b. That the accommodation request of Lifehouse to fully exempt all Lifehouse locations from the operation of all zoning, building and safety laws is not reasonable under the reasonable accommodation analysis set forth in both the ADA and the FHA.

THE CITY OF HUNTINGTON,

By Counsel

_____
**Scott A. Damron (WVSB #935)**
**City Attorney**
**City of Huntington**
**P.O. Box 1659**
**Huntington, WV 25717**
*Phone: (304)696-5540 ext. 2018*
*damrons@huntingtonwv.gov*